Our next case today, Golden Bridge Technologies v. Apple, 2013-1496. Tell me how to say your last name. Gerritana. Gerritana. Please proceed. Good morning. May it please the Court, Mark Gerritana with McCarter & English representing the plaintiff and appellant, Golden Bridge Technology or GBT. I'll first start with claim construction, and we submit that it was legally impermissible for the District Court to read into the preamble limitation the requirement that it be spread before transmission. First, we submit that the specification and file history are clear, that the terms preamble and spreading are separate and distinct terms and limitations. Secondly, we submit that the disclosure on the preamble is broad and unconstrained. Thirdly, at column 8, under the heading of the preamble signal structure- What if we were to say, we agree with you on all of that, but your problem is that there was a disclaimer? There was a disclaimer when you stipulated in the Texas action, not by virtue of collateral estoppel, but by virtue of the fact that you then submitted that stipulation to the Patent Office, repeatedly directed them to the documents in the IDS for their consideration, and never disavowed the disclaimer, never said to them, and by the way, while we said it meant this, we no longer agree with that. Yeah, we submit, Your Honor, that the Patent Office rules are clear, rules 1.56b2 and 1.97h, that you cannot construe or you cannot deem to be an admission of materiality simply because something is cited in an information disclosure statement to the Patent Office, and therefore you cannot use- When the Patent Office says that, they're talking about prior art references by and large. You can't be on the hook for everything a prior art reference in an IDS discloses. That would make no sense. Agreed, Your Honor. But also, what rule 1.56b2 says is it cannot be used to refute or take a position inconsistent with the position taken before the office, and that's exactly what Apple is arguing here. If we look at the June 2002 office action in the record, the claims simply recited a preamble. Those claims were amended to distinguish over the prior art. Those claims- I'm sorry. The claims were rejected over the prior art. They simply recited a preamble. In response to that rejection, the patentee explicitly amended those claims to recite spreading the access preamble, and also recited spread access preamble. So in three instances, they added the word spreading. In connection with that amendment, the patentee argued that the claims now specify- Are we bound by 1.1 point whatever whatever you said? I believe we are. I believe it's rule 1.56, I believe. But also, two things. What I want to make, the point I want to make is- How are we bound with regard to whether that amounts to disclaimer in the prosecution? That's a patent office rule. A patent office is only allowed to make procedural, not substantive rules. I agree with you. This goes directly to the heart of claims scope, so I'm trying to figure out how- I agree with you, Your Honor. But I believe that the IDS submission does have to be viewed in the context of the rules that those submissions are subjected to. And I also believe that when you talk about clear disclaimer because something's submitted in the IDS, I believe you have to look at it in context of the entire file history. And when we look at what the patentee argued to the patent office, which was that the claims distinguished over the prior art because spreading was added to those claims, and then in connection with that amendment, and that's in the August 2002 Office Action Response, and in connection with that amendment explicitly argued that the claims now specify spreading, that spreading is an express limitation, and that's why they distinguish over the prior art. And that- and in response to that, the patent office allowed those claims. Now we submit that when a person of ordinary skill looks at that prosecution history, they're going to necessarily understand that in order for the patentee to obtain the allowance of those claims, he had to- on the basis that the preamble was spread, he had to explicitly recite spreading, and the word preamble was not enough. So it's clear we submit from the prosecution history that preamble does not mean spreading. Now, with respect to what's in this voluminous information disclosure statement that- by the way, GBT was required to submit under Rule 1.565 because it was a reexamination proceeding, they were required to submit the litigation record documents. And that- you know, the references to the Texas stipulation played absolutely no role in the prosecution of the claims that were allowed. It was never referenced by the patentee, it was never referenced by the patent office. So we submit in light of that, it's not relevant. It can't constitute a disclaimer. It didn't play any role in the prosecution of the claims. Well, you're saying that you can make statements in the prosecution history about what your claims mean, and we as- or the courts just can't rely on them if there aren't a basis for allowing the claims? What I'm- I'm not suggesting anything quite so broad, Your Honor. Right. Clearly, if someone makes a statement that's part of what you would consider to be the prosecution of the claims and makes it in connection with the prosecution of the claims. But that's not the case here. This was simply something referenced in an IDS that didn't play any role in the prosecution of those claims. And now is being argued by Apple to take a position on the meaning of the claims, which we submit is refused and is entirely inconsistent with the meaning imparted into those- to that claim limitation in the prosecution history in that amendment that was filed in August of 2002. Now we- we submit that the case that we cited, the Baxter case, is analogous and on point. It's the Abbott v. Baxter Labs 334 F3rd 1274 at 1279. And in that case, this court indicated the mere disclosure of potentially material art- material art to the USPTO does not automatically limit the claimed invention. As noted, the examiner did not consider the sale relevant and the applicant did not distinguish the claims over the disclosed sale. I recognize that dealt with prior art. But I think it's also clear that in order for something submitted in an IDS to have an effect on the meaning of the claim and to constitute a disavowal of claims scope or a disclaimer, it's got to play some role in the prosecution. So we submit that the prosecution history is clear, that preamble does not mean spread before transmission, but rather those are separate and distinct terms. What if we disagree? Well, we- I- when you say we disagree with- About the claim construction issue, that we do think all the claims, when you understand the word preamble, it's a spread preamble. Yeah, well, we submit that you should find that there are still issues of fact with respect to the preamble, with respect to whether the signature sequence is a signal for communicating with the base station. Here's my problem with that- And remand for the proceedings. Which is just that this issue has been on the table throughout the entire litigation. All of the relevant time periods, Apple was arguing has to be spreadable and you were saying no, it doesn't. If you believe there was something in the infringing device that still met the preamble limitation regardless of spreadable or non-spreadable, you had an obligation to identify that. I mean, you had to identify what in the accused devices meets the various claim limitations. And you always said PREC preamble. And you didn't really say signature sequence. In fact, your expert talked about two codes being present in the preamble extensively. This is the craziest case I've ever seen. You're relying on their expert and they're relying on your expert. It doesn't make any sense. Well, Your Honor- Your expert seems quite clearly to be talking about what he believes access preamble. He puts it in quotes, meaning directly from the patent means. And so, what do I do with that? Let me clarify, Your Honor. First of all, at the opening of expert discovery, the issue that the fact that GBT was reading the preamble limitation on the signature sequence itself was not in dispute. Why? Show me where it is. In the appendix at pages 526 through 528, Apple, in its contention interrogatory response, specifically at page 528, Apple, in its contention interrogatory response, admitted that GBT was reading the preamble on the signature sequence itself. And if we look at the first full paragraph, where it says, GBT has also alleged that the preamble, access preamble, in each segment of an access burst signal is met by a RATCH pre-RATCH preamble part described in 3GPTS 22.214. And then it says, furthermore, if we skip down- Okay, so where's the part that helps you? So far, I don't see how that sentence helps you. Let me get to the next one, Your Honor. Skip a sentence. It says, furthermore, 3GPP 25.211 explains that the RATCH preamble part is of length 4,096 chips and consists of 256 repetitions of a signature of length 16 chips. Right. No doubt. They say the RATCH preamble part is the signature sequence. I get that. The problem is, this is part of your finger. Is it your finger? No, it's not your finger. It's just part of your finger. So they say the RATCH preamble part is this. So they're saying this is part of the preamble. Yes. And at the very first sentence, they say that GBT has alleged that the preamble, in quotes, the access preamble, in quotes, is met by a RATCH pre-RATCH preamble part. So they acknowledge right at the outset that the preamble imitation is met by the RATCH pre-RATCH preamble part, which is the signature sequence. That was not in dispute. And so, I'm sorry, Your Honor, I just want to make sure that you've got that point. I do. I have it now. OK. So in this contention interrogatory, which was answered just before the part which was answered prior to preparing expert reports, we prepared our expert report based on what was in dispute based on the contention interrogatories. And what was in dispute here, not only did they admit that we were reading the access preamble on the signature sequence, but the only non-infringement contention that they made was that they did not infringe because the signature sequence was not spread by the scrambling code. They never contested that the signature sequence was not a signal for communicating with the base station. And if you look at the previous page, that's the construction they're applying in their non-infringement contention. So when we go into expert discovery and we prepare our expert reports, the issue in dispute is whether or not the signature sequence is spread by the scrambling code. There was no dispute between the parties as reflected in this interrogatory answer. Can I see, can you direct me to where your, because they say GBT's preliminary infringement contention example A at 9, 19, exhibit B at 1, where is that in here? Where is something of yours that affirmatively puts forward the idea that the signature sequence alone can be the preamble? I don't believe our infringement contention itself is in the record, but we submit that it's abundantly clear from their contention interrogatory answer that there was no dispute and that's on page 528, that we were reading the preamble limitation on the signature sequence itself. Why can't we look at your expert report, which is much clearer and much more strongly indicates that it was your position that it was the Pratt preamble that matched onto the claimed access preamble. And we submit, Your Honor, that that's not what our expert report says. We submit that, now, of course, because the issue was not in dispute, that wasn't the focus of the report in showing that, you know, the signature sequence is a signal for communicating. The focus of the report was the- Well, what about the sentence in paragraph 74 of your expert report at A225, I mean, you cite the block quote at page 50 of your blue brief, but somehow you either consciously or accidentally, surgically remove the most important sentence from the entire block quote. Well, what he says, quote, in the accused devices, each access preamble is composed of two spreading codes without message data. That's correct, Your Honor. The patent uses the term access preamble to refer to the preamble both before spreading and after spreading. It's still the preamble. It starts out as a signature sequence, then after spreading, it's still a preamble, and the patent is clear to that effect. I think if we look in the- The access preamble, it's a composition of the signature, and then it gets spread, right, by the scrambling code. That's right. The access preamble starts out as a signature sequence, and that's the access preamble before spreading. It's then combined with the scrambling code, and then it becomes a spread access preamble. But here's the problem. I'm sorry. Go ahead. Here's the problem. They raised summary judgment of non-infringement. You have an obligation then to come back with all of your arguments as to why you are opposing that grant, and you never made this argument. You focused exclusively. For better or worse, put all your eggs in the spread, non-spread basket. You never said ... I mean, you have the obligation to come forward with all your arguments about why they are wrong, and you never came forward with this argument in your opposition. Well, quite frankly, Your Honor, this argument wasn't raised by Apple until ... They moved for summary judgment of non-infringement. If you believed they infringed, you had a burden to come back and say why. But Apple didn't argue until its surreply on summary judgment that we were ... Apple for the first time on a surreply on summary judgment argued that we were not reading the That wasn't true as reflected in their interrogatory answer, and that wasn't the focus of Dr. Vujicic's report because he focused on what was in dispute, whether the signature was fair. I think we'd better hear from the opposing side. You've already used up all your rebuttal time. If you'd like a little bit of it, you'd better sit down. I'll give you some back. Let's hear from the other side. Good morning. May it please the Court, I'm Tim Teeter with Cooley for Apple. There are two separate grounds for affirming the judgment, and I'm going to focus primarily on the preamble access preamble limitation at issue here. Now we cited in the brief, and your honors were asking earlier where is it that we're bound by a statement in the CFRs, we cited in our brief the Exgen case, which indicates that an IDS is part of the prosecution history on which the courts and the public are entitled to rely. And in this case, we had multiple statements ... We find there's a disclaimer there. Well, you only get the disclaimer that they made, and that's actually all you asked for, was your claim construction was identical to the stipulation, which is great. That's what you should have done. You said a signal used for communicating with the base station that is spread before transmission. The district court, unbeknownst to me as to why, gave you a slightly different construction. I don't know if it was a typographical error on her part or what, but she actually said a signal ... Where's her construction? Oops, I've lost it. A signal for communicating with the base station. A signal used for communicating is different than a signal for communicating. A signal for communicating has got to have all the component parts. A signal used for communicating is implying that it's part of what is going to be used to communicate. This wasn't what you asked for. It's what she gave you. She didn't explain why until the reconsideration motion. So why do you get that? That's a great question. So GBT down below asked for facilitating or the notion of facilitating to be included in the claim construction, and we objected to that. And what the district court did by including the word for is make it clear that the district court was rejecting GBT's request that the signal merely be a code that somehow facilitates communication with the base station. Yeah, but that can't be based on the disclaimer because they didn't disclaim that. She modified the language of the disclaimer. Disclaimer goes to spreading. What it doesn't go to is this facilitating idea. That's clear from the stipulation itself and when she modified the language. So my question is, why do you now get that claim construction? So there are two separate pieces to it. One is, is spreading required? Is there a spreading requirement? Yeah, but let's not talk about that. The second piece is, is for communicating required or just used to communicate? Is that required? And what the district court was doing there was the district court was going back to the patent, looking at the patent, looking at what it shows. If you look at figure four, for example, you see the preamble is generated and then the preamble is spread and then that preamble is then transmitted and the district court is indicating. Well, no, let's look at the patent. Let's look at column five of the 267. Do you have that one with you because that's the one I marked up? I know they're all the same, but then they're slightly off on their line numbers. So if you have 267, that would be perfect. I'm there. Okay. So in the middle, right around, I guess it's about line 17, the paragraph that begins, in the MS transmitter, can I see that? And I'm sorry, your honor, which column are you on? I'm at column five, about line 17, in the MS transmitter. Data are FEC encoded. You keep going down. The preamble generator, 452, generates a preamble. And the pilot generator, 453, generates a pilot for the preamble. Now we've already got a fully generated preamble, which everyone agrees doesn't include the pilot signal. That's not an issue. The multiplexer then multiplexes the data, the preamble and the pilot. Now the data there is message data, right? You and I, we're all sort of in agreement about that. Right. That could be message data with the preamble. Okay. And then the packet formatter, and we've already got a preamble. The packet formatter formats the preamble pilot and data into a common packet channel. Further, the packet formatter formats data, signaling, acknowledgement signal, collision, detection signal. Wow. The packet formatter is adding a bunch of stuff that wasn't previously part of the preamble that wasn't generated as part of the preamble. This is the only disclosed embodiment as best as I can tell, and what it shows is the preamble is one segment of the signal that ultimately gets transmitted, but it isn't the whole ball of wax. In fact, when I read this patent, I really honestly don't come to the conclusion that the preamble is anything other than the signature sequence, although not limited to it. But it seems to me that's what they're clearly conveying. So given this embodiment, how can you say, unless it was through the disclaimer, how can you say that the preamble has to have everything and be a signal ready for transmission? So if we look at figure six, figure six shows us what is transmitted and when. Your Honor was pointing out the packet formatter that shows that lots of different things can ultimately get transmitted by the base station, and that's absolutely correct. If we look at figure six, we see what is transmitted and when. So I look at the left side of figure six, P0, that's the first preamble at the low power level. Is this a picture of the access burst? Is that what this is? Right, this is the access burst, and then you also have pilots in between, and then you have an acknowledgment from the base station. The upper line is the signals from the base station. The lower line or the lower part of the picture is the signals from the mobile. And what we see here in figure six, first we have a preamble sent all by itself, that's P0, that's the little rectangle there. And then there's nothing from the base station that comes back. So then in this particular embodiment, they also send a pilot, but note they send the pilot by itself, that's the AP0. Then they send another preamble, that's the rectangle P1, and that preamble is sent all by itself. Again, we don't have all this other information like the ACK and the CD and the pilot, they're sent at different times. Wait, so are you saying that in order to construe the preamble the way the district court judge did, I have to read out the disclosure of the embodiment at column five? No, because column five isn't saying those things are all done at exactly the same time. Well, they're all done before spreading. They're all done before spreading, which is before transmission. Absolutely correct. So if we look at figure four, we see the packet formatter is going to take different inputs. But figure six tells us that those different inputs come at different times. So for example, at one time you'll have only the preamble coming from 453 through the multiplexer to the packet formatter, the gain block, then spread, then transmitted. No, the preamble is not going to come through the multiplexer to the packet formatter, then the gain block, then be spread, then transmitted. Not in the embodiment disclosed in column five, which says, it's expressly referring to figure four, because this embodiment in column five has the packet formatter adding on all of these extra pieces of data before it is spread and transmitted, and they were not part of the preamble. Right. So this is... So the preamble is not being sent without this stuff. It's all coming to the packet formatter together, then it's being format, then it's being spread, then it's being sent. So that's where we have a little bit of confusion, because the essence of the invention, the point of the invention, is to send preambles all by themselves. I don't think that's right. I think both sides... It's the preambles with message data. Well, it actually, according to the definition that the court adopted over our objection, the court held that a preamble is without message data. The preamble is, right. The preamble is. But it's not to send preambles all by themselves. Well, you send a preamble in figure six by itself, and if it's detected by the base station, the base station will send a layer one acknowledgement. Once that happens, then the mobile will send the collision detection signal and the message information. I don't see how to accept the claim construction that you're advocating for without reading out this limitation, this embodiment. And it's the only one. It's the only embodiment. There isn't an alternative embodiment anywhere, which says, for example, the preamble includes all the header and signaling data necessary to communicate with the base station. There is nothing in the patent that says that. So you're in tuning from a label on a figure, which, by the way, the very description I pointed to is for that figure, and the description seems inconsistent with what you're wanting to derive from the figure. And what I'm saying is that the signaling and the TPC information and the acknowledgement, those things come at different times. This is not all simultaneously coming to the packet formatter. That's what this invention is trying to say. It's not doing it very well, apparently, but that's what it's trying to say. So the idea is, as we see in figure six, you send just the preambles by itself. And the whole point is, you don't want to send extraneous information other than what you need to send to connect to the base station. I hear you saying that that's the way you think it should be read, but it does say the packet is outputted from the packet formatter. The packet already has all that stuff in it. It just said so it did. Then that packet is spread spectrum processed with a spreading chip, blah, blah, blah, blah, that packet, the same one. I don't want to use up all your time on this. I assume your argument would be, even, Your Honor, if there was a problem with that, they had an obligation to break up their argument about signature sequence being a potentially infringing device in opposition to summary judgment and they didn't do it. Is that where you might go if I weren't convinced? That's where I might go and that's exactly where I will go. So if we look at Dr. Kikias' report, which was in the record at A631, Dr. Kikias' report was served on September 28, 2012. So that's before Markman, before GBT's opening Markman brief. That's before GBT filed its motion for summary judgment of infringement a couple months later. And if we look at what Dr. Kikias says, Dr. Kikias addresses both GBT's position and Apple's position and it's all right here in the appendix. And the first thing he says is that to determine whether an access preamble or preamble is spread, we must first determine what corresponds to the access signal in those accused products. This is A631, Your Honor. So here at A631, he's clearly indicating, this is right at the bottom of Paragraph 146, that the access signal in UMTS, that's the standard, is the preamble signature times the scrambling sequence. It's those two things together. And first he frames the question. He says the question is we have to determine whether an access preamble or preamble is spread. Well, we have to first determine what that preamble is. And he says we're looking for a signal without message data that is used to establish communication with the base station. And then he says under GBT's construction, the access signal must be the combination of the signature and the scrambling code. So here he's saying I've looked at GBT's contentions. That's what they say. Under their contentions is the combination. Then he says I've looked at Dr. Wojcic's report. That's GBT's expert. And he says indeed he states on several occasions that the preamble is the combination of the signature and the scrambling code. So he walks through that and says they're raising that combination. Dr. Wojcic says it. He cites in full the paragraphs that they cite in part in their brief. And then he goes through and he further addresses the portion of the standard, the GBT address, that's in our interrogatory. Remind me, whose expert is this? This is Dr. Kikias. This is our expert. This is Apple's expert. This is Apple's expert explaining, number one, what the question is or what the issue is. We have to figure out what the preamble is. Okay, but this is your expert saying what he thinks their construction is. Right. What their construction is and he's addressing their expert's infringement read. And he's saying their expert focuses on the combination of the signature and the scrambling. And then at page 632, he's block quoting paragraphs from GBT's expert report that supports that understanding of GBT's construction. Exactly. Where in the bolded parts, it points out that in GBT's view, it's the preamble, which is composed of two spreading codes without message data, that corresponds to the access preamble. Precisely correct. And this is before the Markman and this is before the summary judgment. So GBT at this point is completely on notice that we're defending this case on the grounds that they're accusing the combination. And they were accusing the combination for a couple of reasons. One, some of the claims require the preamble to be assigned to the base stations. Yeah, I get that. And there's no assignment. Like 50, the last element. Exactly. And the signature sequence is not even unique, really, much less assigned to the base station. I get that. I understand why they might have made that argument and your arguments in response. What about, though, your expert's statements? That's why I said it just kind of causes me to giggle that they cite you and you cite them. 638, what about your expert to the extent that he interpreted Dr. Wojcic? How do I say his name? Wojcic? What? Dr. Wojcic? Wojcic. It's hard to say. I have to praise them many times. I'm sorry. Dr. Wojcic. Dr. Wojcic. What about the fact that your expert said, as an initial matter, Dr. Wojcic's inconsistent way of defining preamble manifests itself clearly here. On the one hand, he suggests these signatures, that each of these signatures is a preamble. Right, so here he's driving at this argument that they- That's the single signature. But then he says on the other hand, he argues preamble is the 256 repetition of any one of these signatures. That's the signature sequence. Yeah, that is the signature sequence. So right here what Dr. Kikais is saying is, Dr. Wojcic is less than precise. So we have at the opening portions of the passages I cited- But he, while he's less than precise, he is understanding Dr. Wojcic as arguing that the preamble is the 256-fold repetition of any one of these signatures. Well, he's arguing that he suggests that. He's saying he suggests that. Where he suggested that was in this argument that during the generation of the preamble- What do you mean he suggests it? He says- On the other hand, he argues that the preamble is the 256-fold repetition of any one of these signatures. Right, on the previous sentence is what I was referring to. On the one hand, he suggests- But that's not- That's right. That's not the one I'm talking about. That's not the signature sequence. Right. He actually says he argues this. Right. So at this point- I don't think he does, but I know you don't either. We don't either. But you said you thought he did, and so it's like ships passing in the night. Well, at that point, they had a call to make. It's summary judgment. They had a decision to make, and they had a decision to make as to which arguments to raise. So how was this briefed? Your opposing counsel says that it wasn't until your surreply at the summary judgment  but it was the PRAC preamble. So in our opening brief, what happened? They moved for summary judgment. We cross-moved. We opposed and cross-moved. And in our opening brief, we argued that GBT accuses the PRAC preamble, and the PRAC preamble is not spread. We cited Dr. Kikaias, and that's at A2869-2871. And we, I believe, have some figures. I don't know if I made the... Here we go at A2874. This is probably one of the best examples. We have a figure where we show that Dr. Vojtich is accusing the generation of the access signal. So he's accusing when... He's saying it's somehow spread when it's generated, but he's not saying that the PRAC preamble is spread. He hasn't been able to find that. So therefore, we're entitled to infringe. Would you also respond to the notion that it was... You didn't raise it till your serve reply, that it wasn't your obligation to, that they... You said no infringement, and here's why. And isn't it at that point their obligation to point out all the reasons there might be infringement? That's clearly true, too. There's no question that we had raised the argument that they do not show spreading of the PRAC preamble code. If we look at 2871 as well... And so then they should come back with, we don't have to prove spreading, and even if we did, there's this other portion that could be interpreted as the preamble, and that is before spreading. That's correct. And they didn't do that second part. What they did was they put all their eggs in one basket, as Your Honor pointed out, and they said it didn't matter because they believed that the claims did not require spreading. Okay, you've exhausted your time, so I'm going to restore this whole rebuttal time for them, which will keep us right on track. Thank you, Your Honor. Your Honor, if we look at page 299 of the appendix, and this is where the claim construction chart that Dr. Vujicic provided, and where he summarizes his analysis that relates to the claim limitation that was being discussed in paragraph 74, and he explains here, and he's talking about how the signature sequence is spread by the scrambling code. And because the signature sequence is the preamble before spreading, it's spread by the scrambling code, then it becomes the final spread access preamble. And he explains here near the bottom of that first row, he says the red lines in the figures correspond to the... Where are you? Oh, I'm sorry, I'm on page A299 in the claim chart. Right. And I'm down about... But what he says is the preamble signature spread by the preamble scrambling code. He clearly indicates that both of these things are part of the preamble. So I'm misunderstanding what you're... So if we look down, I think it's about 10 lines from the bottom, there's an IE there, and he says the blue curves correspond to the power spectrum of the final spread access preamble. I'm lost. Oh, I'm sorry. I'm on page A299. Yeah. And I'm... It's the second-to-last sentence in the first row, where it starts out with the red lines.  Yeah, the first box. There's no red lines here. There's no red lines. On page A299. I'm on A299, and the second-to-last sentence is each preamble signature signal... Oh, I'm sorry. The third... I apologize. Third-to-last sentence. It says the red lines. Yeah, the red lines. The red lines. Yeah, it's the third-to-last sentence. I apologize. So it says the red lines... Are we there? Yeah. The red lines in the figures correspond to the preamble signature power spectrum, while the blue curves correspond to the power spectrum of the final spread access preamble, i.e., the preamble signature spread by the preamble scrambling code. So the thrust of Dr. Wojcik's opinion is that we start out with a signature sequence, and that's what he focused on in his Exhibit C. That's the preamble before spreading. And he didn't get into that in detail, because there was no dispute that we were reading the preamble on that as reflected in the contention interrogatory response. Yeah, but they said summary judgment, no infringement. None. That's right. You only responded with spreading. What they argued, and because we have to keep in mind, there were two different competing claim constructions at issue before the district court. There was our claim construction, where we used the term access signal. There was Apple's claim construction, which was largely adopted by the district court, but for the without message data portion. And in connection with our claim construction, Dr. Koukayas argued that the signature sequence is not an access signal. He said the only access signal is the combined signal. And so we responded to that and said, yes, it is an access signal. The signature sequence is an access signal, and we referenced Dr. Wojcik's report. That's when, in their SIR reply, they said, wait a minute, GBT is raising a completely new argument. The argument that we defended since the outset was that the preamble is the combined signal. Okay, where in your briefing on summary judgment did you say that the signature is the claimed access preamble? Well, what we focused on is, we laid out up front in our summary judgment report, excuse me, in our summary judgment brief, we said the issue in dispute here, in light of the interrogatory answer, No, you didn't say in light of the interrogatory answer. Well, no, I'm sorry, we did. We said the issue in dispute is whether the signature sequence is spread by the scrambling code, whether the access preamble is spread. And that's what we focused on. Right, because your theory was that in the generation of the access preamble, there is spreading, and that's good enough. And that was the point where the district court said, no, that's not good enough. You can't, in the generation of the claimed access preamble, have spreading. You have to spread the actual final access preamble itself, and that is what's lacking or missing from the defendant's system. Well, you're right, Your Honor, that's what the district court concluded. That was not our theory. Our theory was not that we spread. And that's why I'm asking you, where in your briefing did you say it's the signature that's the claimed access preamble? What we said in our briefing, and I'm sorry, I don't have the specific site for you, but what's clear in our briefing is that we say that the signature sequence is spread to create the final spread access preamble. Because what the briefing focused on was whether or not the signature sequence spread and increased the bandwidth. Okay, well, I think we've exhausted all of your time, plus the extra time, plus a little more beyond that. So we should call it a day. I thank both counsel. The argument's been helpful. Case is taken under submission. Thank you.